Thank you very much. Thank you, Your Honor. All right. We're going to go on to case number five. And that is Appeal 23-2525 Economic Loss Plaintiffs v. Abbott Laboratories. And it's Ms. Grumbacher, yes? Yes. Good afternoon, Your Honors. May it please the Court. Kylie Grumbacher on behalf of the Plaintiff Appellant. I'm going to endeavor to save three minutes for rebuttal. And it is my first time before this Court, so I'm honored to be here. Welcome. Welcome, welcome. Thank you. We're always happy to have, as I mentioned earlier, more customers. Well, unfortunately, I am here, but I am honored to be here. The case before you presents a simple question of whether a group of plaintiffs have established sufficient constitutional standing under Article III to bring various state consumer protection and warranty claims. The district court rightly determined this was a facial, not a factual challenge. And so all of the allegations in the complaint should be taken together and construed in light of most favorable plaintiffs. Here it's alleged that Abbott is one of the very few companies that produce, manufacture, and sell infant formula in the United States. Ms. Grumbacher, can I ask you a question? You sure can. What specifically is the plaintiff's injury?  Because your briefs seem to bounce around a little bit. I mean, we started with at-risk, and then I think the plaintiff spent about a paragraph talking about the pay-to-premium, and your whole reply brief is explaining your injury as a pay-to-premium, which I don't understand because they got the product they bought. So I think that's a very fair question. Here, I think what the plaintiffs say they thought they were getting was formula produced at 50% more than the generic price. And they did. That's exactly what they got. We talk about the aqua. I forgot what it's called, the aqua. That's different. Plaintiffs bought a defective product. Here they didn't. They don't even allege that they did. Well, I think that they do. I mean, I think paragraph 99 of the complaint talks about the consent decree that Abbott entered into. As part of that consent decree, it admitted that the formula there violated federal regulations, and under the CFR, that would deem those products adulterated and illegal for sale. So those products should never have been placed into the stream of commerce. But look, look, timing is so important here. Before Abbott announced the recall, the plaintiffs could not have been concerned about the risk because they didn't know about it. As soon as Abbott announced the recall, the plaintiffs knew about the contaminated product. But there was no risk that they were going to use the formula because they were instructed not to use it. And they were offered full refunds. So at what point in time was there a known risk? Well, I think that the injury here is the fact that they paid for a product that should never have been on the market. And that puts it more in line with cases like DiBernatis in the 11th Circuit and Franz in the 9th Circuit, where even in those cases, there wasn't an allegation that they failed to perform or that they inflicted physical harm. The injury was that they were illegal to sell, and they should never have been placed into the stream of commerce. Same here. I mean, the plaintiffs paid for a product that was illegal, that was adulterated because of the way it was produced. That devalues the product. So the price that they paid at the point of sale, that's a concrete, tangible injury. Under your theory of injury due to risk, what are the outer limits? If there was a one in a billion chance that someone could buy a contaminated product, does every person who ever bought that product have standing to sue? Well, under our fact pattern, every product is adulterated. Every product came out of these manufacturing processes. Why were there warnings then, Ms. Graumbacher, with regard to certain lots and others? Well, the class definition goes back further than the immediate time period of the recall. And so throughout that time period, and there are allegations in the complaint, the manufacturing violated federal statutes and regulations. And Abbott agreed, and a consent agreed, admitted that was the case. Under the CFR, those products are deemed adulterated. And under 21 U.S.C. 331, it's illegal to sell those products. So to us, that's a very cabined-in, limited injury. This is not going to open the floodgates. I mean, how many times do you have a product the defendant admits is adulterated? And plaintiffs say, well, wait a minute. We paid 50% more because we trusted you and because we thought we got a safe, unadulterated product. I mean, to go back and say it didn't cause physical injury doesn't really explain the injury here. I mean, the injury was safe and unadulterated. Here it's admittedly adulterated and unsafe to sell, illegal to sell. We think that the district court's analysis expanded the scope beyond standing because here we have what we believe is a direct, traceable injury, concrete financial harm, and it's capable of redress. That's all that standing alleges. We may not win. You wanted an uncontaminated formula, right? We wanted unadulterated formula, yes. That's what the allegation is. And you bought an unadulterated formula, right? The allegations in the complaint are not that. The allegation is that product produced at the formula, at the Sturgis formula, was not produced, and there are pages and pages of allegations about why it wasn't produced in accordance with the federal regulations. But the federal statutes say, under CFR 106, that if they aren't complying with these federal regulations, these products are deemed adulterated. And that at least sets up a plausible injury here for plaintiffs. Does the deeming overcome the deficiencies in the complaint? I think the deeming overcomes the fear that this is a speculative injury or that there is questions about how many lots are enough or how much needs to be pled. Here it's every single product that came out is adulterated because it came out of a facility where the regulations were violated. Is this like a risk contribution theory of liability? Well, I mean, we're borrowing specifically directly from the consent decree. I mean, if you admit that you produce in violation of the federal statutes, CFR 21 CFR 106 says those products are deemed adulterated. And if they are deemed adulterated, then they're illegal to sell, and they should never have been in the stream of commerce. Each and every product is subject to that. Really? At least those are the allegations. I mean, the question then is, you know, are these concrete? Is this tangible harm? I think we can all agree monetary harm is very concrete. And is it plausible or was it speculative? You know, when you start getting into was there actual physical contaminants in the product, that's where it becomes a little bit more difficult for the plaintiffs and maybe in cases like Johnson & Johnson where there wasn't a consent decree and there wasn't an admission that this product either had illegal ingredients, like in the 11th Circuit, or in this case violated federal regulations, I think it's a lot more difficult. The district court was certainly concerned about a limiting principle here. But this isn't like lettuce that is contaminated, and this is a systemic pattern of manufacturing that's in violation of the federal rules and admission by the defendant that it's done that. Okay. I'm going to reserve the rest of my time. Thank you. Okay. We're going to give you your three minutes. Okay. All right. Mr. O'Quinn. Thank you, Judge Rovner. May it please the Court, John O'Quinn on behalf of Abbott. We're hearing some very new arguments here at the podium for the first time. We're hearing new arguments on appeal, new arguments at the podium. I want to level set and correct my colleague on a key point. There is no admission in the consent decree that Abbott sold adulterated foods. That's not in the consent decree. It's not in their complaint. The only thing that is— That would be a weird thing to admit. That would be a weird thing to admit. And, of course, Judge Kirsch, adulteration is a legal conclusion. It's not a factual issue. So, you know, sort of set that aside as well. But, you know, the allegation in their complaint is simply that the consent order recites what the underlying complaint alleged. That's paragraph 99 of the plaintiff's complaint. It's at SA33. So there is no admission, and their analogy to DeBernadese, the 11th Circuit case, completely crumbles. Even if the 11th Circuit case was applicable, and it is not, it would be immediately distinguishable for two reasons. Number one, as the panel itself in DeBernadese recognized, it addressed a very special limited circumstance. The specific circumstance is limited to where, quote, Congress had affirmatively banned from sale those types of ingredients. In other words, the transactions were void ab initio. It's not that there was an ex post determination that there may have been a problem with them. And there has been no such ex post determination here. An FDA Form 483 is not a final determination by the agency. And, again, the consent decree simply references allegations, not any findings. Second, the more analogous cases here, of course, are the Myers-Armstrong case, which was affirmed by the 9th Circuit, as well as the Rivera case in the 5th Circuit. Under plaintiff's rationale, those would have come out the opposite way. That is under the rationale that the plaintiffs are articulating now here at the podium. But to take a step back, I think it's important to understand the sweep of the plaintiff's theory. Anyone who has ever eaten in a restaurant that is subsequently alleged not to have been up to sanitation code, even if the individual meal that they received was completely unaffected by that and they did not get sick and they did not face a future risk of getting sick, that person would be injured. The same would be true for anyone who ever ate groceries that were recalled because they didn't allegedly follow various procedures, even though it is not alleged that it affected that particular grocery item that the person bought, would be injured. And, in fact, if you take their theory to its logical or, I submit, illogical conclusion, anyone who has ever rented an apartment or bought tickets to the theater or flown in a plane or ridden on a bus or a train would be injured if those venues or vehicles were subsequently alleged to have been unsafe  Not even that they had a defect that didn't affect them, but they were simply at risk of having a defect. And that is the gravamen of the plaintiff's complaint here is that they did not get a safe product. If you look at their allegations, they refer to safety over and over and over again. But we know that the plaintiffs did get what they paid for because they do not allege that the cans, the units that they purchased were not safe, were not effective, were not able to be used for the purpose for which they were intended, in other words, as nutritious, nourishing food. In fact, just to be clear about this, they do not allege that the units they specifically bought themselves posed any risk. Their maneuver here is to up-level this and to say, well, there's a risk that the can could have been contaminated. That is not sufficient under the case law. And if this court were to hold that, it would create a circuit split with the 10th and the 8th circuits. In the Renfro and the Wallace cases, they couldn't be any clearer. As Renfro said at page 1305, quote, plaintiff could not have suffered any consumer protection injury if they had not purchased food containing the objectionable ingredients, end quote. It's not simply enough. Renfro rejected the idea that you just need to allege there's a risk that the units you purchased might have been contaminated. You need to allege that the units that you purchased were, in fact, contaminated. And that's what's missing here, that there was no allegation that there's something wrong with the particular units, the particular product they themselves actually purchased. And what that means here is that all roads lead back to whether or not the product itself that the plaintiffs bought was allegedly contaminated or unsafe. They don't allege that. What they allege that they bargained for was safe, nourishing food. And as Judge Cannelli put it, these plaintiffs received safe, nourishing food. Their theory posits a hypothetical problem that did not really affect these particular plaintiffs. Again, not because no one got sick, which they didn't. They're their own allegations. They didn't. And that is evidence that these were not contaminated. But because they do not even allege that the units that they themselves purchased were defective, nor plausibly can they. I'm happy to answer any questions that the court may have on this. The only other point that I would make, if the court has no further questions on this, is that I think this court's relatively recent decision in the Dinerstein case is directly on point. And I think it is ultimately dispositive of the issues here for reasons, frankly, analogous to those that the Renfro and the Wallace court identified. This court at page 515 said, quote, a plaintiff seeking money damages has standing to sue in federal court only for harms that have, in fact, materialized, end quote. And this risk that something in the manufacturing process could have affected particular units certainly did not materialize as to these plaintiffs. They have conceded that by their own allegations. And what they are left with is the kind of breach-only theory that Dinerstein found to be insufficient to create standing. If the court has no questions, I'll yield back the balance of my time. Thank you, Mr. O'Quinn. Thank you very much, Mr. O'Quinn. Thank you, Judge Rivera. Okay. Ms. Graumbacher. Thank you. I appreciate the rebuttal time. I'll be quick. I do think that the consent decree is an important fact here. And whether there is no admission, whether they just simply admitted that the complaint states a claim, these statutes are in there. And if true, I believe they plausibly give plaintiffs a path to at least an injury that they have standing to challenge for warranty claims, for consumer protection claims. So, Ms. Graumbacher, just to characterize the position, and correct me if I'm wrong, if plaintiffs purchased formula that was manufactured at the Sturgis plant during a certain time frame, that would be enough for the plaintiffs to have pleaded financial injury? Yes, given that the allegation is that that manufacturing did not comply with the statutes and are deemed adulterated. I'm over here. That's okay. What would we do in a situation like a restaurant, for instance? This happens all the time. A restaurant gets shut down temporarily for health violations. Would everybody who ate in the restaurant, even though they didn't get sick, they got exactly what they paid for, be able to file a lawsuit against the restaurant because the restaurant was not somehow up to the town's code for a particular period of time? Yeah, that's the analogy that's thrown around a lot. And I think perhaps part of this, too, is the representations made by the defendant, that they're an industry leader and that they paid 50% more. So, to me, it's more like trying to order a piece of yellowtail sashimi from Nobu or some really fancy restaurant, and my door dash driver says, God, that's the other side of town. I'm just going to grab this gas station piece of sashimi, yellowtail, and I'm going to bring it to you. And I eat it and I don't get sick, but I realize later, well, that's not what I paid 50% more for. I was relying on a reputation. I was relying on something else. But that's not what you bought. I mean, that's not what you paid the Uber driver for, presumably. Right. I paid for a more expensive product that I thought was subject to different processes. That's the same here. Well, that would just be fraud. It would be, and I think this is fraud. I mean, I think when a company knows that it's violating federal regulations and that those violations deem the product adulterated and they continue to sell it even though it would be illegal and they charge me 50% more than the generic, I think that's fraud. I think that should never be in the stream of commerce. I think I overpaid. There's some, even if it's a penny, more than I would have ever done at the point of sale. But I guess I'm looking at paragraph 99 of your complaint, and I don't see here an allegation that all of the products that were produced in Sturgis were adulterated. I think that to the complaint taken as a whole that details all of the failings, the systemic failures, which are actually detailed kind of in the codes and the CFRs that are cited in 99, put that together. If it's not clear that that was something alleged by the plaintiffs, we can certainly send it back and let the district court take a look at it. Because if that allegation isn't in the complaint and that's not something we're dealing with here, and it's something that could confer standing, we think we should have the chance to at least have the court look at it rather than slam the door shut to these plaintiffs. And I think that should not take up any more time. Thank you all. Thank you very much. Thank you, Ms. Grambacher. Thank you, Mr. O'Quinn. And the case will be taken under advisement. Now, case number 623-2196, United States v. Yarmel Austin, has been submitted on the briefs. And because of that, we will say adieu and thank everyone. And the court will be in session again tomorrow, but at 11 o'clock. All right.